**J. Ed EVANS and Treva Evans, Plaintiffs-Respondents,**

**v.**

**Roy G. MANSFIELD and Alta E. Mansfield, Defendants-Appellants.**

No. 49176.

Supreme Court of Missouri,

Division No. 1.

Jan. 14, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 11, 1963.

Gerritzen & Gerritzen, by Ray A. Gerritzen, St. Louis, for appellants.

James P. Roach, Camdenton, for respondents.

HOLMAN, Commissioner.

■ In this proceeding instituted under the provisions of Section 228.340 (statutory references are to RSMo 1959, V.A.M.S.) plaintiffs sought to establish a private road over land owned by defendants. A trial before the court resulted in a judgment in favor of plaintiffs and defendants have duly appealed therefrom. We have appellate jurisdiction because title to real estate is involved. Welch v. Shipman, 357 Mo. 838, 210 S.W.2d 1008.

Plaintiffs own a tract of 10.8 acres located on the south shore of the Lake of the Ozarks. The roadway in question runs substantially straight in a southwesterly-northeasterly direction and connects plaintiffs' land with a county road. It runs across a 40-acre tract of defendants' land in such manner that approximately 15 acres lie east of the road and 25 acres to the west thereof. This tract is substantially level and is described as timber land.

In order for plaintiffs to prevail they were required to prove that the road sought is "a way of strict necessity." Section 228.340. The sole contention of defendants upon this appeal is that the court erred in finding for plaintiffs because they did not prove that the way sought was a way of necessity, but, on the contrary, the evidence established that there existed another road by which plaintiffs could travel from the county road to their property. There can be no question but that a roadway has been in existence since 1952 by which it has been possible, at least at times, to travel by automobile from the county road to plaintiffs' property. That road will be hereinafter referred to as the "old road." The road sought across defendants' land will be referred to as the "new road," although that is not a truly accurate designation as it follows the course of a very old narrow roadway that was in existence many years ago but which, in recent years, had not been in use and trees had fallen across it. Moreover, as will hereafter appear, the new road had been constructed and had been in use

prior to the time this action was filed. We will hereafter refer to J. Ed Evans as plaintiff and Roy G. Mansfield as defendant.

H. B. Hart testified that he was in the business of developing real estate; that in 1952 he obtained a contract to develop certain property in the area in which the property now owned by plaintiffs is located; that it was necessary to build a road to obtain access to the property and after defendant refused him permission to build a road over his land he obtained permission from L. O. Nichols to build a temporary road through his land; that he constructed what is now referred to as the old road over the Nichols property; that the land over which the road ran was very rough and hilly; that he "wanted it just so I could get some trucks through, and my surveying crew, and possibly things like that"; that it was not intended as a permanent road; that after a short time he couldn't get over the road with his car, and quit trying; that the road was not practical, was too expensive to maintain, and "you couldn't even think about [maintaining] it" for the small amount of property it served; that "you couldn't hardly keep it maintained unless you built some heavy culverts in there and probably concrete a lot of it."

Plaintiff testified that he did not build a house on his land until after the new road was constructed; that prior to that time he had usually gone to his land by boat but had, on a few occasions, gone over the old road; that the old road was very hazardous and on at least two occasions when he tried to use it his car "got stuck" and he had to go back; that he had tried to go over the road in 1959 in a jeep but had to turn back because a culvert was washed out; that on one occasion when he used the road he ruined both mufflers on his car; that the old road was not passable.

Plaintiff described the circumstances under which the new road was constructed across defendant's land. He stated that he had not wanted to build a house on his land until another road to it was built. Accord-

ingly, in the spring of 1956, he met with defendant and L. O. Nichols and inspected the course of an old road that had previously been in existence across defendant's land; that it was then agreed by the three of them that the new road would be constructed (over that course) and that Mr. Nichols would convey to defendant approximately 15 acres of land which adjoined defendant's land, and in exchange therefor defendant would convey to Nichols the 15 acres of his land that would lie east of the new road; that he had suggested that they go immediately to Camdenton and have the papers prepared, but that both defendant and Nichols stated that they had complete trust in the other and, in effect, that the road could be built immediately and the transfers completed later; that when he came back in two or three weeks the new road had been constructed; that he proceeded to use the new road for about two years, but for some reason defendant and Mr. Nichols had been unable to agree upon the details of transferring the tracts they had agreed to "swap" and that in June of 1958, when he attempted to visit his place, he discovered that defendant had constructed a fence and had placed a gate across the new road and had locked the gate so he couldn't get through; that defendant at that time told him that he had closed the road because he and Nichols "had never swapped the land." (This suit was filed June 21, 1958, and plaintiffs sought and obtained a temporary injunction in connection therewith which permitted them to continue to use the new road until further order of the court.) Plaintiff also testified that although he had never been stopped by Nichols from using the old road, he had never been given permission to use the same.

L. O. Nichols was called as a witness for plaintiff and corroborated plaintiff's testimony in regard to the agreement between himself, plaintiff, and defendant. He also described the old road. He stated that it was a "combination of hills and hollows" and that it crossed several big ravines; that he put in a 24-inch culvert through one

of the ravines and it washed out in two months; that in 1955 he spent $500 "touching up" the road but "it wasn't very long until it was all washed out again"; that there are three bad hills on the road and it is not a proper place for a usable road; that "it couldn't be made into a good passable road, it is too steep"; that in 1959 he had sold the property through which the old road ran.

Earl R. Wilson, a road contractor, testified that at one time he had worked on the old road for Mr. Nichols. In describing it he stated: "It is hilly, there are two deep gullies through there and the hill on the east end of it is very steep and very rocky, solid rock which it is hard to do anything with to maintain it so it is passable"; that it would be very expensive to build the road so that it would be passable the year round; that he saw the road in November 1960 and in his opinion it would have been possible to get over it in a passenger car at that time, but "you couldn't go over 10 miles an hour and it would probably damage the automobile"; that it would cost five times as much to maintain this road as an ordinary road.

Leo J. Christensen, who lives in the neighborhood, testified that he went over the road toward the end of the summer of 1960 and that he considered it a hazardous road; that it was impassable after each rain until it was graded again.

Defendant's first witness was O. G. Cooper who was employed to maintain roads for Camden County Special Road District K. He testified that while there may have been times when the old road had washed out, he had been over it in his automobile; that the road was passable when he saw it on November 1, 1960. He indicated that there was considerable daily traffic over the road during deer season. Another witness for defendant was Arch K. Barnes. He testified that he had been over the old road during the deer season in 1959 and 1960; that the old road was just as passable as the new road, "they are both awful rough." Defendant did not testify.

■ In an action of this nature it is our duty to review the case de novo, weigh the competent evidence, and reach our own conclusions as to the facts, but "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d) V.A.M.R. The essential fact issue in this cause is whether the new road was a way of strict necessity in connecting plaintiff's property with the county road. The trial court specifically found that it was. Commissioners were appointed and in due time filed a report locating the private road and assessing defendant's damages at the sum of $200. Defendants make no complaint about the amount of damages allowed, but have preserved their objections to the finding of the court upon the issue concerning the necessity for the road.

Our study of the transcript herein has caused us to independently arrive at the same conclusion as the trial court. The facts as we find them will support the judgment for plaintiffs upon two different theories.

■ "The fact that the way is one of necessity, that is, strict necessity, and not mere convenience, is a jurisdictional fact, and must be alleged and proved, affirmatively. Colville v. Judy, supra [73 Mo. 651]. So long as the plaintiff had a practicable way to and from his land, either private or public, he had not a right, by necessity, to a way over the defendant's lands. A way, as here used, is a right of way—the privilege of going over another's land. * * * [A] way, as here meant, is a legal way, to use which one has a legal right, which may be enforced, and which may not be rightfully interfered with." Cox v. Tipton, 18 Mo.App. 450, 455, 456. See also Welch v. Shipman, supra.

Defendants contend that because there is another road extending from the county road to plaintiff's land the new road is not a way of strict necessity. That would be quite true if the old road (1) were a reasonably practical way to and from plaintiff's land and (2) if plaintiffs had a legally enforceable right to use said road. However, we do not think the evidence affirmatively supports either of the propositions stated.

■ The convincing evidence in this case is clearly to the effect that the old road may not be safely relied upon as a continuous means of access to plaintiff's land. It traverses such rough and rocky terrain that it cannot be kept in usable condition by the expenditure of reasonable sums for maintenance. In order to be a defense to plaintiff's right to obtain a private road through defendant's property the other available way must be reasonable and practical. See Cox v. Tipton, supra, and Reading v. Chandler, 269 Mo. 589, 192 S.W. 94. The law does not contemplate that a way is reasonable and practical if it would require an expenditure of an unreasonable amount of money in order to construct and maintain it in a dependable, usable condition. The old road was not constructed as a permanent road, is impractical, and could not be used as a dependable means of access to plaintiff's land without the expenditure of an unreasonable amount of money for construction and maintenance. Its existence, under the circumstances, would not bar plaintiff from obtaining a way of necessity over defendant's land.

The evidence also plainly discloses that plaintiffs did not have a legally enforceable right to use the old road. There is no evidence to indicate that it had been dedicated or legally established as a public road or that any public funds had been spent in the maintenance thereof. It was built in 1952 and this case was tried in January 1961, so the road was in existence for a period of not more than nine years before trial time. A prescriptive easement could not have been established over that road because it had not been in existence for a period of ten years and therefore no one could have used it (either adversely or permissively) for the period required to establish a prescriptive right. See Dalton v. John-

son, Mo.Sup., 320 S.W.2d 569. It follows that the owner of the land over which the old road ran could have stopped plaintiffs from using that road and, therefore, that plaintiffs had no legally enforceable right to use the old road at the time this case was tried.

For the reasons stated, the judgment should be affirmed. It is so ordered.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.